[No. 39913. Department Two. March 13, 1969.]

HARRY W. CHURCH, *Respondent*, v. DANIEL WEST *et al., Appellants*, VALLEY FROZEN FOODS, INC., *Respondent.**

*Reported in 452 P.2d 265.

*William G. Ingalls,* for appellants.

*Frank B. Carr* and *Richard Thompson,* for respondent Church.

*H. Roland Hofstedt* (of *Merrick, Burgess & Hofstedt*), for respondent Valley Frozen Foods, Inc.

ARMSTRONG, J.†—This appeal arises out of an automobile collision between plaintiff-respondent Harry Church and defendant-appellant Daniel West. Valley Frozen Foods, Inc. was joined as a defendant by Church, and West cross claimed against the corporation. A jury verdict of $70,000 was granted to the plaintiff as against West. The jury also rendered a verdict in favor of Valley Frozen Foods, Inc. as to both the claims of Church and West. West appeals the decision of the jury and the trial court's order denying the motions of Church and West for judgment n.o.v., or in the

---

†Judge Armstrong is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

alternative for a new trial. Respondent Church filed a brief in this matter supporting the assignments of error and arguments urged by appellant West.

The accident in question occurred at 5:50 a.m., July 30, 1965, on Highway 9, 2 miles south of Snohomish. Respondent Church was northbound and West was traveling south. The collision occurred in the northbound lane. It was a clear, sunshiny morning when Church and West left home, but they encountered an area of fog at the scene of the accident. The fog was in an area approximately 300 feet south and 1 mile north of the accident. Visibility was established at approximately 300 feet or less. Neither party was using his headlights at the time of the accident. Testimony at the trial revealed that Church saw headlights of the pea truck coming toward him immediately before he collided with the West vehicle. Appellant West stated that he first saw the truck 150 feet in front of him, crosswise on the road and turning into the southbound lane. He slammed on his brakes to avoid hitting the truck, swerved into the northbound lane and collided with Church. Both parties were severely injured.

The pea truck, belonging to Valley Frozen Foods, Inc., had pulled out of a pea field adjacent to the highway, loaded with pea vines. Harvesting operations had started in the field the afternoon prior to the accident and it was established that pea trucks were coming out of the field at approximately 10 minute intervals. There is a conflict of testimony regarding whether the truck stopped before it entered the highway. Gilbert Schwarzmiller, a passenger in the West vehicle stated he had seen the pea truck pull out onto the highway, without stopping, approximately 25 to 30 feet in front of appellant's vehicle. Walter Hoerath, an employee of the corporation, stated that he watched the truck leave the field and saw it stop at the highway entrance before pulling out onto the road.

Also in conflict was the presence of a sign alleged to have been put on the highway, facing north, warning of the trucks turning onto the roadway. Tony Houck, an employee of Valley Frozen Foods, Inc., stated he had put the sign on

the road the afternoon prior to the accident. Walter Hoerath stated he had seen the sign on the road when he came to work at 5 a.m. on the morning of the accident. Other witnesses denied having seen the sign at the time of the accident or shortly thereafter. One witness, who had driven by 5 minutes after the accident stated, he did not see any sign at all until the afternoon following the accident. A sign was admitted into evidence purporting to be like the one alleged to have been on the road.

Appellant first assigns error to the manner in which the trial court informed the jury of the condition of employment of appellant's two attorneys. At the outset of the trial the court advised the jury that Mr. Ingalls represented West on his cross claim against Valley Frozen Foods, Inc., and that Mr. Mines represented West against the claim of Church. The court then stated:

> In other words, Mr. Ingalls represents Mr. West on the offense and Mr. Mines represents Mr. West on the defense.

After the statement of the court, counsel for the corporation stated that Mr. Ingalls represented West on his cross claim and Mr. Mines represented West on the Church claim.

It is the argument of appellant West that the manner in which the court and the counsel for Valley Frozen Foods, Inc. mentioned the employment was prejudicial, inasmuch as it injected the issue of insurance into the case. Although appellant does not seem to be asserting that the statements made were an intentional injection of the fact that appellant carried liability insurance, he contends that the real issue is whether the jury may have been influenced in their verdict by such remarks and argues that in the instant case the risk was so great that the jury could have been influenced by the above statements and that a mistrial should have been granted.

This court has consistently held that the fact that a personal injury defendant carries liability insurance is entirely immaterial, but that when this fact is injected into a

case inadvertently or innocently such revelation is not grounds for mistrial. However, the deliberate or wanton injection of this matter for the purpose of prejudicing a jury is grounds for mistrial. *Todd v. Harr, Inc.,* 69 Wn.2d 166, 417 P.2d 945 (1966); *Miller v. Staton,* 64 Wn.2d 837, 394 P.2d 799 (1964); *King v. Starr,* 43 Wn.2d 115, 260 P.2d 351 (1953). We have surveyed the cases on this point and nowhere do we find a case in which statements, such as the ones made in the instant case, were construed to be a prejudicial injection of the issue of insurance. Although we do not approve the manner in which the trial court introduced appellant's counsels, we find that he did not deliberately inject the issue of insurance into the case. Further, we are unable to find any particular prejudice to appellant. If the jury had decided to "play it safe" as appellant asserts, and enter judgment against the party they believed to be insured, it would appear more likely that their verdict would have been against Valley Frozen Foods, Inc., a corporation, not appellant, who was employed as a truck driver.

■ In addition, the trial court is given the discretion to determine whether appellant has been deprived of a fair trial by reason of the injection of an immaterial issue. The trial judge is in the courtroom and can evaluate first hand the statements made and what effect, if any, they have on the jury. In the absence of a showing of abuse of such discretion, his judgment will not be overturned. *Baxter v. Greyhound Corp.,* 65 Wn.2d 421, 397 P.2d 857 (1964).

Respondent Church called as a witness Richard Jones who had driven from Snohomish to the scene of the accident behind West. Jones stated that as a safety precaution he had turned on his lights when he left home although it was a clear day. He testified that he had the lights on when he entered the fog. On cross-examination by counsel for Valley Frozen Foods, Inc., over objection, he was allowed to state that when he was in the fog he felt he needed his lights not so much as to see but to have someone see him. Appellant assigns error to Jones' statement, claiming that the jury was influenced by the opinion testimony and that it was prejudicial to appellant.

Error is also assigned to the trial court ruling that certain statements of state patrolman, Donald Harrell, were admissible. Harrell had investigated the accident and was allowed to testify, over objection, as to the purpose of headlights in fog. Appellant argues that the combined testimony of Jones and Harrell compounded the error as to render the two clearly prejudicial, inasmuch as it is common knowledge that an important purpose of using one's headlights in fog is to warn others of one's presence.

■ Rule 401 of the Model Code of Evidence of the American Law Institute, chapter 5, Expert and Opinion Evidence, provides:

Testimony in Terms of Opinion.

(1) In testifying to what he has perceived a witness, whether or not an expert, may give his testimony in terms which include inferences and may state all relevant inferences, whether or not embracing ultimate issues to be decided by the trier of fact, unless the judge finds

(a) that to draw such inferences requires a special knowledge, skill, experience, or training which the witness does not possess, or

(b) that the witness can readily and with equal accuracy and adequacy communicate what he has perceived to the trier of fact without testifying in terms of inference or stating inferences, *and his use of inferences in testifying will be likely to mislead the trier of fact to the prejudice of the objecting party.*

(2) The judge may require that a witness, before testifying in terms of inference, be first examined concerning the data upon which the inference is founded. (Italics ours.)

This court has approved various facets of rule 401 with regard to expert testimony. *Ward v. J. C. Penney Co.,* 67 Wn.2d 858, 410 P.2d 614 (1966); *Gerard v. Peasley,* 66 Wn.2d 449, 403 P.2d 45 (1965); *Twidwell v. Davidson,* 54 Wn.2d 75, 338 P.2d 326 (1959); *Geberg v. Crosby,* 52 Wn.2d 792, 329 P.2d 184 (1958).

Rule 401, *supra,* has also been cited by this court in regard to lay testimony. *McBroom v. Orner,* 64 Wn.2d 887, 395 P.2d 95 (1964).

By applying the rule and the cases above cited to the facts in the instant case, we come to the conclusion that the trial court did not err in allowing the testimony of either witness.

Jones' testimony in no way misled the jury. Several witnesses testified as to the density of the fog and the visibility at approximately the time of the accident. Jones was asked whether he needed his lights on the morning of the accident and he was entitled to answer the question. While he gave his impressions and conclusions, this was not an answer which would tend to mislead the jury.

Further, it should be pointed out that Jones was called as a witness on behalf of respondent Church and was also very helpful to appellant when cross-examined by him. Appellant's counsel questioned Jones on the matter of headlights and Jones' testimony left the impression that he used his lights regularly as a safety precaution and that they had not been needed for the fog. Respondent, Valley Frozen Foods, Inc., had the right to try to counter this impression. The questions asked of Jones on cross-examination, of which appellant complains, were proper in order to clarify and rebut the answers given to the questions presented to Jones by counsels for West and Church.

Officer Donald Harrell testified that the primary purpose of using headlights in fog was to enable other people on the roadway to see the vehicle with its lights on. Appellant contends that this was a matter of common knowledge and was consequently improper.

It is well established that the trial court has discretion as to whether or not to admit opinion evidence and in *State v. Hart,* 118 Wash. 114, 116, 203 Pac. 4 (1921) the court held:

What is and is not admissible from the mouths of experts cannot be defined by any hard and fast general rule, as there are numerous matters which, while they are in a degree known to many, cannot be said to be so commonly

understood that all men can be presumed to draw reasonable inferences therefrom.

We believe the testimony of Harrell falls within the above described area. While many may be aware of the primary purpose of headlights in fog, it cannot be presumed that all men are cognizant of this fact. The admission of this testimony was within the discretion of the trial court and such discretion was not abused. In addition, it is difficult to understand what prejudice could have resulted to appellant as a result of this testimony or how the jury could have been misled by it.

Appellant's third assignment of error concerns a large sign admitted into evidence which respondent, Valley Frozen Foods, Inc., contended had been on the highway at the time of the accident. The sign had the word "caution" in large fluorescent letters at the top and warned of turning trucks. Appellant argues that a proper foundation was not laid for the admission of the sign and that the sign did not purport to be the actual object, but only the same type and was thus inadmissible. He also contends that there was no direct statement that the sign was in the same condition at the trial as the one it purported to resemble had been at the time of the accident.

At the time the sign was admitted into evidence, Frank Bueller, a member of Valley Frozen Foods, Inc., and owner of the pea field adjacent to the highway where the accident occurred, testified that the sign admitted was the same kind of sign used by the corporation, and that it was exactly the same type of sign as the one that had been placed on the highway. Walter Hoerath also testified that the sign was the one he had seen on the highway the morning of the accident. The sign was also identified by Tony Houck as the same type of sign he had placed on the highway the afternoon prior to the accident.

This court has allowed into evidence samples purporting to be similar to the original that was part of the circumstances, holding that the sample could be admitted for illustrative purposes if relevant and material, and if

supported by proof showing it to be substantially like the real item and substantially similar in operation and function to the object in issue. In *State v. Gray*, 64 Wn.2d 979, 395 P.2d 490 (1964) the court allowed into evidence a knife purporting to be the same type of knife that could have been employed by the defendant in inflicting wounds. In *Owens v. Anderson*, 58 Wn.2d 448, 364 P.2d 14 (1961) a poster, which warned swimmers of diving into unknown waters, was allowed into evidence after it had been identified as being identical to one which had been on display at the scene of a swimming accident.

The issue of whether or not a caution sign was on the highway at the time of the accident was raised by appellant and respondent had a right to meet that issue. The sign had been identified as identical to the one purported to be on the road and a proper foundation had been made for its admission inasmuch as the sign was not held out to be the sign in question but only one used for illustrative purposes. This assignment of error also is without merit.

The last assignment of error deals with the court's failure to give appellant's following proposed instruction No. 10:

> You are instructed that the mere skidding of an automobile is not such an uncommon occurrence as to be, in and of itself, evidence of negligence.

With this assignment of error we cannot agree. The fact that appellant skidded is not relevant to this action. The skidding of the vehicle was not related to the cause of the accident. The primary issues were whether appellant West and respondent Church were negligent in not having their headlights on so as to be seen by the truck and each other, and whether the truck failed to yield the right of way when it entered the highway, thus causing the West vehicle to collide with the one driven by Church.

Appellant attempts to substantiate his position with two cases, *Wellons v. Wiley*, 24 Wn.2d 543, 166 P.2d 852 (1946) and *Woodward v. Simmons*, 7 Wn.2d 10, 108 P.2d 637 (1941). We have examined these cases and found them to be not in point. Both involve situations where skidding was

brought into issue and questioned as to whether it was the proximate cause of the accident involved. Such is not the situation in the instant case.

After careful examination of the record, we are of the conclusion that the decision of the lower court should be affirmed.

HUNTER, C. J., HILL, ROSELLINI, and NEILL, JJ., concur.